UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| CERVOS MEDICAL LLC and<br>RANFAC CORP.,<br><br>            Plaintiffs,<br><br>v.<br><br>BIOPSYBELL S.R.L. and<br>STEM GENIX SOLUTIONS, LLC,<br><br>            Defendants. | Civil Action No.:<br><br><u>JURY TRIAL DEMANDED</u> |

## <u>COMPLAINT</u>

The plaintiffs, Cervos Medical LLC ("Cervos") and Ranfac Corp. ("Ranfac") (collectively "plaintiffs"), for their complaint against the defendants, Biopsybell S.R.L. ("Biopsybell") and Stem Genix Solutions, LLC ("Stem Genix") (collectively "defendants"), state that:

### <u>NATURE OF THE ACTION</u>

1.     In this action, the plaintiffs Cervos Medical LLC and Ranfac Corp. seek to recover damages and a preliminary and permanent injunction against the defendants Biopsybell S.R.L. and Stem Genix Solutions LLC for the defendants' infringement of U.S. Patent Nos. 11,564,669 ("the '669 Patent"), 11,918,193 ("the '193 Patent"), and 11,576,659 ("the '659 Patent"); for defendants' trademark infringement at common law; for the defendants' false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); for the defendants' false or misleading description of fact or false or misleading representation of fact under the Lanham Act 15 U.S.C. § 1125(a); for the defendants' copyright infringement; for the defendants' unfair

competition, and unjust enrichment under the common law of the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

2.      This action arises under the United States Patent Act, the United States Copyright Act, the United States Lanham Trademark Act, and the common law.

3.      This Court has jurisdiction of the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a), (b).  The Court also has supplemental jurisdiction over related claims arising under Pennsylvania law under 28 U.S.C. 1367(a).

4.      This Court has personal jurisdiction over the defendant Stem Genix because it is a Pennsylvania Limited Liability Company, and over both of the defendants because they have had regular and consistent contacts with the Commonwealth of Pennsylvania sufficient to confer personal jurisdiction.

5.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).

## THE PARTIES

6.      The plaintiff, Cervos Medical LLC ("Cervos"), is a Delaware limited liability company with a place of business at 30 Doherty Ave, Avon, Massachusetts  02322.

7.      The plaintiff, Ranfac Corp. ("Ranfac"), is a Massachusetts corporation with a place of business at 30 Doherty Ave, Avon, Massachusetts  02322.

8.      Cervos is a wholly owned subsidiary of Ranfac.

9.      On information and belief, the defendant Biopsybell S.R.L. ("Biopsybell"), is an Italian corporation with a place of business at Via Aldo Manuzio, 24, 41037 Mirandola MO, Italy.

10.     On information and belief, the defendant Stem Genix Solutions, LLC ("Stem Genix") is a Pennsylvania limited liability company with a principal place of business at 2332 Spring Valley Road, Bethlehem, Pennsylvania 180154.

FACTUAL BACKGROUND

THE PLAINTIFFS AND THEIR RIGHTS

11.     Cervos is a medical device company focused on innovative solutions to improve healing that mimic and promote vasculogenesis. Cervos develops and provides minimally invasive, highly efficient, and cost-effective solutions to treat and enable a variety of conditions. Solutions developed by Cervos include bone marrow aspiration ("BMA") devices and technology used to extract bone marrow from patients. Extracted or aspirated bone marrow can be, and are, used in a variety of medical treatments and procedures.

12.     Ranfac is a medical device manufacturer specializing in devices that are classified by the FDA as Class I and II single use medical devices. Ranfac was founded in 1888 and has an established history of over 100 years as a dedicated and trusted associate for medical device development, distribution, and manufacturing. Ranfac manufactures medical devices developed and sold by Cervos, including BMA devices.

13.     As a result of extensive development, investment, and innovation, Cervos and its inventors invented multiple novel devices and methods. A number of patents have been awarded to Cervos to protect its rights in its devices and methods, issued by the United States Patent and Trademark Office and by Patent Offices in other countries. The patents protect rights of Cervos in those novel devices and methods.

14.     A BMA device developed by Cervos and manufactured by Ranfac is used by medical practitioners to extract or aspirate bone marrow from patients, primarily through the

patient's hip bone, and Cervos and Ranfac use their proprietary trademark "MARROW CELLUTION" for the device. For ease of reference, the device developed by Cervos and manufactured by Ranfac to extract or aspirate bone marrow primarily through the patient's hip bone is identified herein as "Marrow Cellution™ device."

15. The device developed by Cervos and referred to herein as the Marrow Cellution™ device represents a technological improvement in the field of BMA devices as it can be used without post extraction centrifugation, minimizes blood dilution, ensures high cell counts, and maintains sterility.

16. Cervos and Ranfac invested heavily in the development, study, fabrication, promotion, and sale of BMA devices, and the Marrow Cellution™ device has been widely acknowledged as a highly effective product in clinical settings.

17. The Marrow Cellution™ device has received widespread praise from practitioners and patients, and its benefits and improvements over other BMA devices have been studied and analyzed in more than seventeen peer-review journal articles and papers. *See, e.g.,* Different methods of bone marrow harvesting influence cell characteristics and purity, affecting clinical outcomes. Caradonna, Eugenio et al. JVS-Vascular Science, Volume 4, 100130.[1]

<u>Cervos' Patent Rights</u>

18. To protect their rights in the Marrow Cellution™ device and the technological innovations it incorporates, the plaintiffs invested time and resources in obtaining patent protection.

---

[1] A more complete list of publications can be found on Cervos' website on the page https://cervos.com/resources/

19.     On January 31, 2023, U.S. Patent No. 11,564,669 ("the '669 Patent"), entitled "Bone Marrow Aspiration Device and Method" issued.  A copy of the '669 Patent is being filed herewith as Exhibit A.

20.     On March 5, 2024, U.S. Patent No. 11,918,193 ("the '193 Patent"), entitled "Bone Marrow Aspiration Device and Method" issued.  A copy of the '193 Patent is being filed herewith as Exhibit B.

21.     On February 14, 2023, the U.S. Patent No. 11,576,659 ("the '659 Patent"), titled "Bone Marrow Aspiration Device and Method" issued.  A copy of the '659 Patent is being filed herewith as Exhibit C.

22.     U.S. Patent Nos. 11,564,669 ("the '669 Patent"), 11,918,193 ("the '193 Patent"), and 11,576,659 ("the '659 Patent") are collectively referred to herein as "Patents-in-Suit."

23.     The Patents-in-Suit claim priority to U.S. Provisional Application No. 62/065,409 filed on October 17, 2014, and U.S. Provisional Application No. 62/174,949 filed on June 12, 2015.

24.     The Patents-in-Suit disclose and claim bone marrow aspiration devices and related methods of use.

25.     Cervos owns the entire right, title, and interest in the Patents-in-Suit, and such ownership rights are confirmed by assignments recorded in the United States Patent and Trademark Office.

<u>Cervos and Ranfac's Trademark Rights</u>

26.     Since at least as early as October 2015, Cervos and Ranfac have continuously used the mark MARROW CELLUTION in commerce in the United States nationwide for goods and services and related devices used to extract or aspirate bone marrow from patients, primarily

through the patient's hip bone.  Cervos and Ranfac have used the MARROW CELLUTION mark continuously in connection with these goods and services from October 2015 to the present.  Examples of use by the plaintiffs of "MARROW CELLUTION" in commerce appear at the page https://cervos.com/marrow-cellution/ on a website maintained by Cervos and on packaging for devices sold, offered for sale, and promoted by the plaintiffs.  The MARROW CELLUTION mark is also used by the plaintiffs in promoting services about and using the Marrow Cellution™ device.

27.    As a result of the plaintiffs' use of the trademark MARROW CELLUTION, the plaintiffs have rights in the MARROW CELLUTION mark.

28.    Through extensive and long period of use by the plaintiffs over an extended period of time, the MARROW CELLUTION mark has become distinctively associated with the plaintiffs and their Marrow Cellution™ device and related goods and services.

29.    A strong secondary meaning has been established by plaintiffs in the MARROW CELLUTION mark through the widespread and extensive use of the mark, including, but not limited to, use of the mark for nearly a decade, extensive advertising of the mark, sales of the goods and services offered under or in connection with the mark, and exclusive use of the mark.

30.    As a result of the goodwill and reputation of the plaintiffs and the MARROW CELLUTION mark, customers seeking BMA goods and services, such as the Marrow Cellution™ device, have come to recognize the MARROW CELLUTION mark as indicating the high-quality and reliable products and services of the plaintiffs.

<u>Ranfac's Rights in Copyrighted Material</u>

31.    As part of their marketing of their BMA products and related goods and services, the plaintiffs created multiple works describing and promoting their BMA products, including

the Marrow Cellution™ device.  These works include website content, fact sheets, brochures, and similar marketing materials.

32.    In October 2015, Ranfac authored the work "Marrow Cellution Website" accessible at the domain marrowcellution.com.  The work describes and promotes the Marrow Cellution™ device.  On April 18, 2025, the United States Copyright Office issued a registration for the work with Copyright Registration No. TXu 2-481-797.  A copy of the TXu 2-481-797 Copyright Registration and a specimen of its protected work is being filed herewith as Exhibit D.

33.    In October 2015, Ranfac, Endocellutions, Inc., and Aspire Medical Innovations GmbH authored the work "Marrow Cellution Autologous Bone Marrow Aspiration & Bone Graft Harvesting."  The work is a fact sheet describing and promoting the Marrow Cellution™ device.  On April 18, 2025, the United States Copyright Office registered the work with Copyright Registration No. TX 9-494-210.  A copy of the TX 9-494-210 Copyright Registration and a specimen of its protected work is being filed herewith as Exhibit E.

34.    In January, Ranfac Corp., Endocellutions, Inc., and Aspire Medical Innovations GmbH authored the work "Aspirate to Application without Centrifugation." The work is a brochure describing and promoting the Marrow Cellution™ device.  On April 18, 2025, the United States Copyright Office registered the work with Copyright Registration No. TX 9-494-212.  A copy of the TX 9-494-212 Copyright Registration and a specimen of its protected work is being filed herewith as Exhibit F.

35.    As a result of Ranfac's authorship and registration of the works "Marrow Cellution Website," "Marrow Cellution Autologous Bone Marrow Aspiration & Bone Graft

Harvesting," and "Aspirate to Application Without Centrifugation" (collectively "Plaintiff's Copyrighted Works") Ranfac[2] has rights in Plaintiff's Copyrighted Works.

<u>The Relationship Between the Plaintiffs and the Defendants</u>

36.     The plaintiffs engaged third party distributors to promote, sell, and provide support for their BMA products and related services, including the Marrow Cellution™ device. One such distributor was the defendant Stem Genix.

37.     On July 2019, Stem Genix became a distributor of the plaintiffs' Marrow Cellution ™ device and related services.  As a distributor, Stem Genix offered for sale, sold, and promoted the Marrow Cellution™ device and related services and also provided instructions, training, and other information on how, when, and why to use the Marrow Cellution™ device to end users such as medical practitioners and facilities.

38.     In its role as a distributor of the Marrow Cellution™ device, Stem Genix requested and received copies of and access to marketing materials for the Marrow Cellution™ device, including Plaintiff's Copyrighted Works.  As one example, during May 2018, Stem Genix specifically requested "old MC [Marrow Cellution] brochures, the ones that say application to aspiration" to prepare promotional materials for the Marrow Cellution™ device, and Ranfac provided the requested material.  Attached as Exhibit G is an email chain between Nikki Kashner, of Stem Genix, and Harlan Adler, of Cervos and Ranfac, in which Stem Genix is provided a copy of the work "Aspirate to Application Without Centrifugation."

39.     As a result of its innovative product, promotional materials, and reputation protected by patent, trademark, and copyright rights, the plaintiffs were successful in promoting

---

[2] In 2023 by written agreement, Ranfac acquired Endocellutions, Inc.'s rights in intellectual property related to BMA, including any rights Endocellutions, Inc. had in Plaintiff's Copyrighted Works.

the adoption, use, and purchase of the Marrow Cellution™ device by medical practitioners and facilities, which was beneficial to its distributors including Stem Genix.

40.     For about half a dozen years, Stem Genix was a distributor for the plaintiffs and received compensation.

41.     Plaintiffs provided Plaintiff's Copyrighted Works and other materials to Stem Genix for use by Stem Genix as promotional materials for the Marrow Cellution™ device ("Provided Materials") solely in their role as a distributor of the Marrow Cellution™ device.

42.     Stem Genix used Provided Materials to create promotional materials for it to use to promote the Marrow Cellution™ device ("Stem Genix Marrow Cellution™ Promotional Material").

43.     Stem Genix Marrow Cellution™ Promotional Material makes prominent and significant use of the MARROW CELLUTION mark to promote and offer for sale the Marrow Cellution™ device.   As an illustrative example, Stem Genix Marrow Cellution™ Promotional Material  includes the website page https://www.stemgenixsolutions.com/homeproduct/marrow-cellutiontm/ ("Stem Genix Marrow Cellution™ Page").  A copy of the Stem Genix Marrow Cellution™ Page is attached hereto as Exhibit H.

44.     On July 10, 2024, Cervos terminated Stem Genix's status as a distributor. Attached hereto as Exhibit I is a copy of the Notice Letter sent from Cervos to Stem Genix on July 1, 2024.  As a consequence, Stem Genix no longer had approval or authorization to use the MARROW CELLUTION mark, Plaintiffs' Copyrighted Work, the Provided Materials, or any material prepared from Provided Materials, including but not limited to Stem Genix Marrow Cellution™ Promotional Material and Stem Genix Marrow Cellution™ Page.

45.     Stem Genix continued to use, publish, and distribute Stem Genix Marrow Cellution™ Promotional Material and Stem Genix Marrow Cellution™ Page, despite its termination as a distributor.

46.     Recently, the plaintiffs learned that Stem Genix had begun to sell, offer for sale, and promote a product bearing the mark "Marrow Stem" ("Marrow Stem device") in competition with the Marrow Cellution™ device.

47.     Currently, the Stem Genix Website promotes as "OUR PRODUCTS" the Marrow Cellution™ device and the competing Marrow Stem device side by side.  What follows is a snip from the home page of Stem Genix's website, https://www.stemgenixsolutions.com/:



48.     Stem Genix's website includes a website page https://www.stemgenixsolutions.com/homeproduct/marrowstem/ promoting and offering for sale

9129914.1

the Marrow Stem device ("Stem Genix Marrow Stem Page").  A copy of Stem Genix Marrow Stem Page is attached hereto as Exhibit J.

49.    The Stem Genix Marrow Cellution™ Page and the Stem Genix Marrow Stem Page are accessible using "Click Here" buttons that appear side-by-side as displayed above, and their promoted products are both identified with the description "Bone Marrow Aspirate."  As more fully set forth hereinbelow, the Stem Genix Marrow Cellution™ Page and the Stem Genix Marrow Stem Page are nearly identical but for the substitution of "Marrow Stem" for "Marrow Cellution."

50.    On information and belief, the Marrow Stem device sold and promoted by Stem Genix is manufactured by the defendant Biopsybell.

51.    On information and belief, Stem Genix turned to Biopsybell and its Marrow Stem device to fill the void resulting from the loss of its position as a distributor of the plaintiffs' Marrow Cellution™ device.

52.    After Stem Genix was terminated as a distributor, without authority and in violation and infringement of the plaintiffs' rights, Stem Genix has continued to use and host Stem Genix Marrow Cellution™ Promotional Material, Stem Genix Marrow Cellution™ Page, and the MARROW CELLUTION mark on its website https://www.stemgenixsolutions.com/.

53.    On information and belief, customers and potential customers of the plaintiffs' products, particularly the Marrow Cellution™ device, will be directed to and land on Stem Genix's website at least in part due to its unauthorized and infringing continued use of the Provided Materials, Stem Genix Marrow Cellution™ Promotional Material, Stem Genix Marrow Cellution™ Page, the MARROW CELLUTION mark, and Stem Genix's continued and unauthorized promotion and offers for sale of the Marrow Cellution™ device.

54.    On information and belief, Stem Genix and Biopsybell are using Stem Genix former status as a Marrow Cellution™ distributor, the Provided Materials, Stem Genix Marrow Cellution™ Promotional Material, Stem Genix Marrow Cellution™ Page, and the MARROW CELLUTION mark to suggest, falsely, an association between the plaintiffs and the defendants and to mislead and divert customers and potential customers of the Marrow Cellution™ device to the defendants' competing and infringing Marrow Stem device, to the plaintiffs' detriment and the defendants' benefit.

<u>The Defendants' Patent Infringement</u>

55.    On information and belief, the overwhelming success of the Marrow Cellution™ device was noticed by the plaintiffs' competitors, including Biopsybell.  According to Internet Protocol (IP) records tracking access to Ranfac's website, Biopsybell accessed and viewed the webpage promoting and providing information regarding the Marrow Cellution™ device multiple times during March 2020.

56.    On information and belief, in November 2020, Biopsybell launched a BMA product, the Marrow Stem device.  On information and belief, the Marrow Stem device replicates features of the Marrow Cellution™ device including, as non-limiting examples, a signal needle design, a screw mechanism, and a handle.  Pages from Biopsybell's website promoting and describing its Marrow Stem device are attached hereto as Exhibit K.

57.    What follows is picture of the Marrow Stem device available on Biopsybell's website at the page https://www.biopsybell.com/products/ortho-biologics/marrow-stem-bone-marrow-mesenchymal-stem-cells-aspiration-kit/:



58.     What follows is Fig. 5 of the Patents-in-Suit includes a diagram of a patented device:

9129914.1



FIG. 5

59.    On information and belief, Biopsybell sells, offers for sale, advertises, and imports the Marrow Stem device in and into the United States.

60.    On information and belief, Biopsybell promotes and induces the use of the Marrow Stem device in the United States by its customers and customers of its distributors.

61.    On information and belief, visitors to Biopsybell's website can purchase the Marrow Stem device in the United States at least by using the displayed "Contact Us" form.

62.    On information and belief, users can purchase the Marrow Stem device in the United States at least through distributors partnered with Biopsybell, including but not limited to Stem Genix.

63.    On November 6, 2020, Biopsybell submitted a 510(k) premarket notification to the U.S. Food & Drug Administration for the Marrow Stem device ("Marrow Stem's 510(k)"). A copy of Marrow Stem's 510(k) is attached hereto as Exhibit L.

64.    Marrow Stem's 510(k) identified the Marrow Stem device as "substantially equivalent" to plaintiffs' "Marrow Cellution Bone Marrow Aspiration Needle. *See* Exhibit L at pg. 5.

65.    Marrow Stem's 510(k) recited that the "Intended use" and "Mechanism of Action" for the Marrow Stem device and the Marrow Cellution™ device are almost identical.

| | Subject device | Predicate device (K150563) |
|---|---|---|
| Device | BONE MARROW MSC ASPIRATION KIT | Marrow Cellution Bone Marrow Aspiration Needle (K150563) |
| 510(K) number | - | |
| Applicant | BIOSPYBELL S.R.L. | RANFAC |
| **Classification** | | |
| Reg. Number | 876.1075 | 876.1075 |
| Product Code | KNW | KNW |
| Regulatory Class | II | II |
| **Intended use** | | |
| Intended use | The BONE MARROW MSC ASPIRATION KIT is intended for use for aspiration / explant of bone marrow through a piston syringe. | The Marrow Cellution Bone Marrow Aspiration Needle is intended for use for aspiration of bone marrow or autologous blood using a standard piston syringe. |

|  | Subject device | Predicate device (K150563) |
|---|---|---|
| Mechanism of Action / Mode of Action | The mechanism of action is bone marrow aspiration / explant. The needle is placed manually, then with a single puncture, is possible to collect bone marrow samples at different heights through the rotation of the rotating spacer. | The mechanism of action is bone marrow aspiration / explant. The needle is placed manually, then with a single puncture, is possible to collect bone marrow samples at different heights through the rotation of the ring nut. |

*See* Exhibit L at pgs. 6-7.

66.     On information and belief, Biopsybell's manufacture, offers for sale, sale, or importation of the Marrow Stem device infringes at least one claim of the Patents-in-Suit.

67.     On information and belief, Stem Genix's offers for sale, sale, or importation of the Marrow Stem device infringes at least one claim of the Patents-in-Suit.

68.     On information and belief, the Marrow Stem device is a device for bone marrow aspiration comprising all elements, literally or under the doctrine of equivalents, of at least claim 1 of the '193 Patent.

69.     On information and belief, the Marrow Stem device is a device for bone marrow aspiration comprising all elements, literally or under the doctrine of equivalents, of at least claim 1 of the '669 Patent.

70.     On information and belief, Biopsybell's use of the Marrow Stem device infringes at least one claim of the Patents-in-Suit as separate infringing methods or in infringing combinations.

9129914.1

71.     On information and belief, Stem Genix's use of the Marrow Stem device infringes at least one claim of the Patents-in-Suit as separate infringing methods or in infringing combinations.

72.     On information and belief, Biopsybell's and Stem Genix's use of the Marrow Stem device carries out a method for aspirating bone marrow comprising all elements, literally or under the doctrine of equivalents, of at least claim 1 of the '659 Patent.

73.     Stem Genix advertises on its website that they provide "expert clinical training and support" to "health care professionals" and "provide medical professionals with the training and tools they need to offer regenerative medical therapies." *See* https://www.stemgenixsolutions.com/.

74.     On information and belief, the training and support provided by Stem Genix includes instructions, guidance, and directions on use of the Marrow Stem device.  On information and belief, use of the Marrow Stem device in accordance with the instructions, guidance, and directions provided by the Stem Genix, infringes at least one claim of the Patents-in-Suit.

75.     Biopsybell, on its website, includes instructions, guidance, and support on use of the infringing Marrow Stem device, for example, a video tutorial and step by step diagram.

9129914.1



*See* https://www.biopsybell.com/products/ortho-biologics/marrow-stem-bone-marrow-mesenchymal-stem-cells-aspiration-kit/

76.     On information and belief, the materials provided by Biopsybell include instructions, guidance, and direction on use of the infringing Marrow Stem device.  On information and belief, use of the Marrow Stem device in accordance with the instructions, guidance, and direction provided by the Biopsybell, infringes at least one claim of the Patents-in-Suit.

77.     On information and belief, Biopsybell and Stem Genix actively encourage and induce infringement of the Patents-in-Suit by end users of the Marrow Stem device at least through its advertisement, sale, and promotion of the Marrow Stem device and through

instructions, advertisements, training, and direction, provided by Biopsybell and Stem Genix, on how to use the Marrow Stem device.

78.    On information and belief, end users of the Marrow Stem device directly infringe the Patent-in-Suit by practicing acts encouraged and induced by Biopsybell and Stem Genix at least in instructions, advertisements, training and direction provided by Biopsybell and Stem Genix.

79.    On information and belief, the Marrow Stem device and its components constitute a material part of and are especially made or adapted for the invention recited in and protected by at least one claim of the Patents-in-Suit and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

80.    On information and belief, Biospybell has been aware of the plaintiffs' Marrow Cellution™ device and the Patents-in-Suit since at least as early as 2020 due to their repeated viewing of the webpage http://www.ranfac.com/marrowcellution.

81.    On February 11, 2025, Harlan Adler of Ranfac and Cervos sent an email to Nicola Scagliarini of Biospybell that identified the Patents-in-Suit and set forth concerns that the sale of the Marrow Stem device infringed the Patents-in-Suit.  Biospybell did not respond.

82.    On information and belief, Stem Genix was aware of the plaintiffs' Marrow Cellution™ device and the Patents-in-Suit at least due to its status as a Marrow Cellution™ device distributor and the information it requested and received as a Marrow Cellution™ device distributor.  The Stem Genix Marrow Cellution™ Page disclosed and continued to disclose that Marrow Cellution "uses patented technology."  *See* H at pg. 2.

83.    On information and belief, the defendants knew the Patents-in-Suit and the infringement of the patents by the Marrow Stem device prior to filing of this complaint, and, in

any event, are on notice of the Patents-in-Suit and their infringement thereof at least as of the date of filing of this complaint.

84.    On information and belief, the defendants used plaintiffs' Marrow Cellution™ device and the Patents-in-Suit to develop, create a market for, and demonstrate the financial viability of the Marrow Stem device sold by defendants.

85.    On information and belief, the defendants are aware, or should be aware, that they are infringing and encouraging and inducing end users of the Marrow Stem device to infringe at least one claim of the Patents-in-Suit.

86.    On information and belief, the defendants are aware, or should be aware, that the Marrow Stem device or its components contribute to infringement of at least one claim of the Patents-in-Suit.

87.    On information and belief, at least due to the defendants' existing knowledge of the Patents-in-Suit and their infringement thereof, the defendants' direct and indirect infringement of the Patents-in-Suit is willful.

The Defendants' Trademark Infringement

88.    On information and belief, Stem Genix is the owner and operator of the website accessible at marrowstem.com ("Marrowstem Website").

89.    On the Marrowstem Website, the defendant Stem Genix sells, offers for sale, and promotes Biospybell's infringing Marrow Stem device.  The Marrowstem Website lists as its operator's contact information P.O. Box 544 Center Valley, PA 18034 United States of America, the same address as Stem Genix, and replicates the content of the Stem Genix Marrow Stem Page.  A copy of the Marrowstem Website is attached hereto as Exhibit M.

90.     On information and belief, Biopsybell is involved in the creation, distribution, approval, and publication of the Stem Genix Marrow Cellution™ Page, the Stem Genix Marrow Stem Page, and the Marrowstem Website.

91.     Despite no longer being a distributor of the Marrow Cellution™ device, Stem Genix continues to use the MARROW CELLUTION trademark on the Stem Genix Marrow Cellution™ Page and the Stem Genix Marrow Cellution™ Promotional Material.  *See* Exhibit H. Stem Genix is not authorized to use the MARROW CELLUTION trademark, and continued use by Stem Genix, including on the Stem Genix Marrow Cellution™ Page and in the Stem Genix Marrow Cellution™ Promotional Material, infringes the plaintiffs' rights in the MARROW CELLUTION trademark.

92.     On information and belief, Stem Genix's continued use of the MARROW CELLUTION trademark, including on the Stem Genix Marrow Cellution™ Page and in the Stem Genix Marrow Cellution™ Promotional Material, is intended to cause confusion and to mislead the public regarding Stem Genix's status as a Marrow Cellution™ device distributor and to divert customers and potential customers of the Marrow Cellution™ device to the defendants' infringing Marrow Stem device.

93.     Biopsybell's website, the Stem Genix Marrow Stem Page, and the Marrowstem Website repeatedly use the marks MARROW STEM, MARROWSTEM, and MARROW-STEM ("Defendants' Marrow Stem Trademarks") to identify and promote the defendants' infringing Marrow Stem device.  *See* Exhibits J, K, and M.

94.     The Defendants' recently adopted Marrow Stem Trademarks are confusingly similar to the plaintiffs' MARROW CELLUTION trademark, and Defendants' Marrow Stem

9129914.1

Trademarks and are used for goods and services nearly identical to the goods and services for which the MARROW CELLUTION trademark is used.

95.    On information and belief, use of Defendants' Marrow Stem Trademarks has created and continues to create a likelihood of confusion that harms and will continue to harm the plaintiffs, their customers, their prospective customers, and the public, and improperly and incorrectly implies an association between the defendants, their goods and services (Marrow Stem device) and the plaintiffs and their goods and services (Marrow Cellution™ device).

96.    On information and belief, use of Defendants' Marrow Stem Trademarks by Stem Genix is especially confusing and misleading at least because of their previous status as a distributor of the Marrow Cellution™ device and their continued unauthorized use of the MARROW CELLUTION trademark, including in close proximity to Defendants' Marrow Stem Trademarks.

97.    Use of Defendants' Marrow Stem Trademarks by Stem Genix and Biopsybell, at least on Biopsybell's website, the Stem Genix Marrow Stem Page, and the Marrowstem Website, infringes the plaintiffs' trademark rights in the MARROW CELLUTION trademark.

98.    On information and belief, at least due to the defendants' knowledge of the plaintiffs, their Marrow Cellution™ device, and their intellectual property, including the MARROW CELLUTION trademark, the defendants' infringement of the MARROW CELLUTION trademark is willful.

<u>Defendants' False Designation of Origin, False Advertising, and Copyright Infringement</u>

99.    The defendants have appropriated and are using descriptions of the plaintiffs' Marrow Cellution™ device as descriptions of the defendants' Marrow Stem device.

100.    The defendants' use of descriptions of the plaintiffs' Marrow Cellution™ device as descriptions of the defendants' Marrow Stem device is false and misleading.

101.    The Stem Genix Marrow Cellution™ Page and the content thereon describes the plaintiffs' Marrow Cellution™ device.  On information and belief, the Stem Genix Marrow Cellution™ Page incorporates, was based on, and was created using Provided Materials, including Plaintiff's Copyrighted Works, that describe the plaintiffs' Marrow Cellution™ device.

102.    On information and belief, to create the Stem Genix Marrow Stem Page, the defendants copied the Stem Genix Marrow Cellution™ Page and substituted "Marrow Stem" for "Marrow Cellution."  Shown below are example excerpts demonstrating the near identical nature of the Stem Genix Marrow Stem Page and the Stem Genix Marrow Cellution™ Page.  *See* Exhibits H and J.



https://www.stemgenixsolutions.com/homeproduct/marrow-cellutiontm/

9129914.1

# MARROWSTEM™

| PRODUCT DESCRIPTION |
| COMPETITIVE ADVANTAGES |
| ORDERING INFORMATION |

MARROWSTEM™ bone marrow aspiration device is a minimally invasive procedure that leverages patented technology to extract high-quality stem and progenitor cells from various areas within the marrow space, while reducing the risk of peripheral blood contamination.



MARROW ASPIRATION TO APPLICATION - MINIMAL MANIPULATION

https://www.stemgenixsolutions.com/homeproduct/marrowstem/

## What are the Limitations of a Traditional Trocar?

Traditional bone marrow aspiration needles aspirate primarily through an open-ended cannula. Because fluid under force follows the path of least resistance the traditional trocar aspiration leads to excess peripheral blood contamination and inadequate collection of key stem and progenitor cells as well as an overall diminished cellular yield. For this reason, a high volume of bone marrow aspirate must be collected from multiple locations and then manipulated (i.e., centrifuged or chemical separation in a lab) before being applied for regenerative therapies.



## How does the Marrow Cellution™ System Over Come these Limitations?

The innovative design of the Marrow Cellution™ Aspiration System offers two key, unique design features that maximizes cellular yield, minimizes patient discomfort, and reduces the length of time necessary to achieve greater results while maintaining the sterile field.

> Closed tip aspiration cannula that restricts aspiration through the side holes of the cannula and away from the channel caused by the tip of the needle thereby avoiding excess peripheral blood infiltration.

> Incorporated technology to precisely reposition the harvesting cannula within the marrow space after each aspiration allowing for measured, controlled retraction of the aspiration cannula to collect bone marrow aspirate from multiple geographies inside the medullary space from a single puncture. This feature achieves a clinicians desire for a single point of entry as well as facilitating patient comfort.



https://www.stemgenixsolutions.com/homeproduct/marrow-cellutiontm/

9129914.1

## What are the Limitations of a Traditional Trocar?

Traditional bone marrow aspiration needles typically aspirate through an open-ended cannula. As fluid under pressure follows the path of least resistance, this method results in excessive peripheral blood contamination and insufficient collection of essential stem and progenitor cells, leading to a reduced overall cellular yield. Consequently, large volumes of bone marrow aspirate must be gathered from multiple sites and then manipulated (e.g., centrifuged or chemically separated in a lab) before being used in regenerative therapies.



## How Does the MARROW-STEM™ System Overcome These Limitations?

The innovative design of the MARROW-STEM™ Aspiration System incorporates two key features that maximize cellular yield, minimize patient discomfort, and reduce the time needed to achieve optimal results, all while preserving the sterile field.



> The closed-tip aspiration cannula limits aspiration to the side holes of the cannula, avoiding the channel created by the needle tip and reducing peripheral blood infiltration.

> Integrated technology allows precise repositioning of the harvesting cannula within the marrow space after each aspiration. This enables controlled retraction of the cannula to collect bone marrow aspirate from multiple regions of the medullary space with a single puncture, meeting the clinician's preference for a single entry point while enhancing patient comfort.

https://www.stemgenixsolutions.com/homeproduct/marrowstem/

9129914.1

# KEY BENEFITS

 **Most Cost Effective Biologic**

The Marrow Cellution™ System delivers a better regenerative solution with more stem cells at a reduced cost compared to industries leading solutions

 **Minimize Sample Waste**

Centrifugation systems typically discard 80% of the aspirate due to the high levels of peripheral blood contamination. Worse, approximately 40% of the desired cells are discarded because their density is similar to the undesired red cell centrifuge component and thus discarded, substantially limiting the regenerative potential of the sample.

 **Minimizes Sterility Challenges**

Centrifugation systems require passing the BMA off the sterile field for processing and back on for implantation. The Marrow Cellution™ System eliminates the additional steps where infection concerns need to be managed.

 **Minimize Use of Anti-Coagulants**

Centrifugation systems require at least 10% dilution by volume of anti-coagulant to allow the sample to separate as well as another 10% dilution in the form of a neutralizing agent such as thrombin and calcium chloride in order for the marrow to clot in the graft. The  Marrow Cellution™  System eliminates these requirements.

 **Efficient and Innovative**

Traditional trocars require several penetrations and additional preparation while also requiring a traditional centrifugation which typically requires more than 20 minutes of spin time not to mention the additional personnel (perfusion) and support time needed for preparation and cleanup of the equipment.  Marrow Cellution™ can obtain higher CFU-f counts with one penetration and 0 spin time.

 **Eliminate the Need to Filter**

Traditional protocols require the marrow to be filtered prior to centrifugation.  Marrow Cellution™  achieves a bone marrow aggregate that allows cells bound within a cell aggregate to be delivered to the patient when mixed with graft material or injected directly. This is not the case when aggregates are filtered out prior to centrifugation. Filtering takes additional time but more importantly filtering reduces regenerative potential.

Dr. Dan Kuebler Professor of Biology, Chair of the Biology Department; Franciscan University

https://www.stemgenixsolutions.com/homeproduct/marrow-cellutiontm/

9129914.1

## KEY BENEFITS

 **Most Cost Effective Biologic**

The MARROWSTEM™ System delivers a better regenerative solution with more stem cells at a reduced cost compared to industries leading solutions

 **Minimize Sample Waste**

Centrifugation systems typically discard 80% of the aspirate due to the high levels of peripheral blood contamination. Worse, approximately 40% of the desired cells are discarded because their density is similar to the undesired red cell centrifuge component and thus discarded, substantially limiting the regenerative potential of the sample.

 **Minimizes Sterility Challenges**

Centrifugation systems require passing the BMA off the sterile field for processing and back on for implantation. The MARROWSTEM™ System eliminates the additional steps where infection concerns need to be managed.

 **Minimize Use of Anti-Coagulants**

Centrifugation systems require at least 10% dilution by volume of anti-coagulant to allow the sample to separate as well as another 10% dilution in the form of a neutralizing agent such as thrombin and calcium chloride in order for the marrow to clot in the graft. The MARROWSTEM™ System eliminates these requirements.

 **Efficient and Innovative**

Traditional trocars require several penetrations and additional preparation while also requiring a traditional centrifugation which typically requires more than 20 minutes of spin time not to mention the additional personnel (perfusion) and support time needed for preparation and cleanup of the equipment. Marrow Cellution™ can obtain higher CFU-f counts with one penetration and 0 spin time.

 **Eliminate the Need to Filter**

Traditional protocols require the marrow to be filtered prior to centrifugation. MARROWSTEM™ achieves a bone marrow aspirate that allows cells bound within a cell aggregate to be delivered to the patient when mixed with graft material or injected directly. This is not the case when aggregates are filtered out prior to centrifugation. Filtering takes additional time but more importantly filtering reduces regenerative potential.

Dr. Dan Kuebler Professor of Biology, Chair of the Biology Department; Franciscan University

https://www.stemgenixsolutions.com/homeproduct/marrowstem/

103.    The Stem Genix Marrow Stem Page also includes research and testimony about the benefits and properties of the plaintiffs' Marrow Cellution™ device, and misleadingly and falsely attributes them to the Marrow Stem device. For example, the CFU-F Cell Count Comparison research displayed in the graphic below and citations to research by Dr. Dan Kuebler Professor of Biology, Chair of the Biology Department; Franciscan University[3] and the

---

[3] *See e.g.*, [White Paper] Marrow Cellution: The Impact of Volume on Related Cell Counts Using The MARROW CELLUTION™ Bone Marrow Aspiration System Scarpone M, Kuebler D.

9129914.1

publication Scarpone, M., Kuebler, D., Chambers, A. et al. Isolation of clinically relevant

concentrations of bone marrow mesenchymal stem cells without centrifugation. J Transl Med 17,

10 (2019) and



https://www.stemgenixsolutions.com/homeproduct/marrowstem/ (annotated)

104.    The Marrowstem Website uses the same or similar descriptions of and citations

regarding the Marrow Cellution™ device to describe the Marrow Stem device.  Ascribing

descriptions of and citations regarding the Marrow Cellution™ device to the Marrow Stem

device is false and misleading.

9129914.1

# Key Benefits

**01**

**Cost-Effective & High-Yield**

MARROW-STEM™ provides a superior regenerative solution, delivering more stem cells at a lower cost than other leading options.

**02**

**Maximizes Stem-Cell Retention**

Unlike centrifugation, which discards up to 80% of aspirate and 40% of key cells, MARROW-STEM™ preserves a higher concentration for optimal regeneration.

**03**

**Enhanced Sterility & Safety**

By eliminating off-field processing, MARROW-STEM™ reduces infection risks and maintains sterility throughout the procedure.

**04**

**Faster & More Efficient**

Requiring only one penetration and no centrifugation, MARROW-STEM™ reduces procedure time and eliminates the need for extra personnel.

**05**

**Preserves Regenerative Potential**

Unlike traditional methods that filter out valuable cell aggregates, MARROW-STEM™ retains them for direct application, maximizing healing potential.

Dr. Dan Kuebler Professor of Biology, Chair of the Biology Department; Franciscan University

A larger-volume of aspirate (more than 2mL) from a given site is contraindicated with the additional volume contributing little to the overall number of bone-marrow cells and results principally in unnecessary blood loss.

MUSCHLER G. et al Aspiration to Obtain Osteoblast Progenitor Cells from Human Bone Marrow: The Influence of "Aspiration Volume The Journal of Bone and Joint Surgery;" VOL. 79-A, NO. 11 Cleveland Clinic

https://marrowstem.com/products/

105.    On information and belief, the Stem Genix Marrow Stem Page and the Marrowstem Website present descriptions of the defendants' Marrow Stem device that are false and misleading because they are based on information concerning the plaintiffs' Marrow Cellution™ device and not the Marrow Stem device.

106.    On information and belief, the use of descriptions of the Marrow Cellution™ device and its benefits to describe the defendants' infringing Marrow Stem device is part of an

intentional pattern of behavior, including the acts of patent, copyright, and trademark infringement set forth herein, that is calculated to confuse and mislead customers and potential customers and to divert sales from the Marrow Cellution™ device to the Marrow Stem device, to the plaintiffs' detriment and the defendants' benefit.

107.    The defendants' use of descriptions of the Marrow Cellution™ device and its benefits for the defendants' Marrow Stem device constitutes false or misleading descriptions of fact and misleading representations of fact that are likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, or association of the defendants and their Marrow Stem device with the plaintiffs and their Marrow Cellution™ device.

108.    On information and belief, the defendants' use of descriptions of the Marrow Cellution™ device and its benefits for the defendants' Marrow Stem device constitutes false or misleading description of fact and misleading representations of fact in commercial advertising or promotion that the nature, characteristics, and qualities of the Marrow Stem device.

109.    Stem Genix had and was provided access to Plaintiff's Copyrighted Works as a Marrow Cellution™ device distributor at least due to their inclusion in the Provided Materials. On information and belief, Biospybell had access to Plaintiff's Copyrighted Works at least through publicly available materials and Biopsybell's relationship with Stem Genix.

110.    The Stem Genix Marrow Cellution™ Page includes, is substantially similar to, and was created using Plaintiff's Copyrighted Works.

111.    The Stem Genix Marrow Stem Page and the Marrowstem Website include, are substantially similar to, and were created using Plaintiff's Copyrighted Works.

112.    The defendants' use, publication, and distribution of The Stem Genix Marrow Cellution™ Page, the Stem Genix Marrow Stem Page, and the Marrowstem Website infringe the Ranfac's rights in Plaintiff's Copyrighted Works.

113.    On information and belief, at least due to the defendants' existing knowledge of the plaintiffs, their Marrow Cellution™ device, and their intellectual property, including Plaintiff's Copyrighted Works, the defendants' infringement of Plaintiff's Copyrighted Works is willful.

114.    The defendants' actions, including direct and indirect infringement of the Patents-in-Suit, infringement the plaintiffs' MARROW CELLUTION trademark, infringement of the Plaintiff's Copyrighted Works, and the defendants' false designation of origin and false descriptions of their Marrow Stem device are causing clear and irreparable harm to the plaintiffs.

115.    On information and belief, the defendants are selling and offering for sale the infringing Marrow Stem device to past and current customers of the plaintiffs.

116.    On information and belief, Stem Genix is using information obtained as a past Marrow Cellution™ device distributor to promote, sell, and offer for sale the infringing Marrow Stem device, including in competition with the Marrow Cellution™ device.

117.    The damage and threats to the plaintiffs' business and intellectual property are and have become untenable.

COUNT I
(Infringement of U.S. Patent No. 11,564,669)

118.    The plaintiffs repeat and reallege the allegations in paragraphs 1-117 of this complaint as if fully set forth herein.

119.    On information and belief, the defendants have infringed and are infringing one or more claims of the '669 Patent, including at least claim 1 of the '669 Patent, in violation of 35 U.S.C. § 271(a) by manufacturing, selling, offering for sale, and importing a device claimed by the '669 Patent including, but not limited to, the Marrow Stem device.

120.    On information and belief, the defendants have infringed and are infringing one or more claims of the '669 Patent in violation of 35 U.S.C. § 271(b) by inducing customers and users of the Marrow Stem device to infringe one or more claims of the '669 Patent.

121.    On information and belief, the defendants contributed to the infringement of one or more claims of the '669 Patent in violation of 35 U.S.C. § 271(c) by customers and users of the Marrow Stem device.

122.    The plaintiffs have suffered and will continue to suffer damages as a result of the defendants' infringement of the '669 Patent.

123.    The defendants' infringement of the '669 Patent is causing irreparable harm to the plaintiffs for which the plaintiffs have no adequate remedy at law and will continue to cause irreparable harm unless the defendants are enjoined by this Court.

124.    On information and belief, the defendants' infringement of the '669 Patent is willful, and the plaintiffs are entitled to enhancement of damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under § 285.

<u>COUNT II</u>
(Infringement of U.S. Patent No. 11,918,193)

125.     The plaintiffs repeat and reallege the allegations in paragraphs 1-124 of this complaint as if fully set forth herein.

126.     On information and belief, the defendants have infringed and are infringing one or more claims of the '193 Patent, including at least claim 1 of the '193 Patent, in violation of 35 U.S.C. § 271(a) by manufacturing, selling, offering for sale, and importing a device claimed by the '193 Patent including, but not limited to, the Marrow Stem device.

127.     On information and belief, the defendants have infringed and are infringing one or more claims of the '193 Patent in violation of 35 U.S.C. § 271(b) by inducing customers and users of the Marrow Stem device to infringe one or more claims of the '193 Patent.

128.     On information and belief, the defendants contributed to the infringement of one or more claims of the '193 Patent in violation of 35 U.S.C. § 271(c) by customers and users of the Marrow Stem device.

129.     The plaintiffs have suffered and will continue to suffer damages as a result of the defendants' infringement of the '193 Patent.

130.     The defendants' infringement of the '193 Patent is causing irreparable harm to the plaintiffs for which the plaintiffs have no adequate remedy at law and will continue to cause irreparable harm unless the defendants are enjoined by this Court.

131.     On information and belief, the defendants' infringement of the '193 Patent is willful, and the plaintiffs are entitled to enhancement of damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under § 285.

9129914.1

<u>COUNT III</u>
(Infringement of U.S. Patent No. 11,576,659)

132.    The plaintiffs repeat and reallege the allegations in paragraphs 1-131 of this complaint as if fully set forth herein.

133.    On information and belief, the defendants have infringed and are infringing one or more claims of the '659 Patent, including at least claim 1 of the '659 Patent, in violation of 35 U.S.C. § 271(a) practicing a method a claimed by the '659 Patent including, but not limited to, development, testing, and use of the Marrow Stem device.

134.    On information and belief, the defendants have infringed and are infringing one or more claims of the '659 Patent in violation of 35 U.S.C. § 271(b) by inducing customers and users of the Marrow Stem device to infringe one or more claims of the '659 Patent.

135.    On information and belief, the defendants contributed to the infringement of one or more claims of the '659 Patent in violation of 35 U.S.C. § 271(c) by customers and users of the Marrow Stem device.

136.    The plaintiffs have suffered and will continue to suffer damages as a result of the defendants' infringement of the '659 Patent.

137.    The defendants' infringement of the '659 Patent is causing irreparable harm to the plaintiffs for which the plaintiffs have no adequate remedy at law and will continue to cause irreparable harm unless the defendants are enjoined by this Court.

138.    On information and belief, the defendants' infringement of the '659 Patent is willful, and the plaintiffs are entitled to enhancement of damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under § 285.

<u>COUNT IV</u>
(Trademark Infringement under Common Law)

139.    The plaintiffs repeat and reallege paragraphs 1 through 138 of this complaint as if they were fully set forth.

140.    The plaintiffs own all rights, title, and interest in the MARROW CELLUTION mark, including common law rights.

141.    The defendants have infringed and are infringing the plaintiffs' common law rights in the MARROW CELLUTION mark at least by the defendants' continued unauthorized use of "Marrow Cellution" on the Stem Genix Marrow Cellution™ Page and other Stem Genix Marrow Cellution™ Promotional Material after Stem Genix's status as a Marrow Cellution™ device distributor was terminated.

142.    The defendants have infringed and are infringing the plaintiffs' common law rights in the MARROW CELLUTION mark at least by the defendants' use of MARROW STEM, MARROWSTEM, and MARROW-STEM ("Defendants' Marrow Stem Trademarks") including, but not limited to, uses on The Stem Genix Marrow Stem Page, the Marrowstem Website, Biopsybell's website, and the Marrow Stem device.

143.    The defendants' use of the MARROW CELLUTION mark and Defendants' Marrow Stem Trademarks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of the defendants with the plaintiffs or as to the origin, sponsorship, or approval of its goods, services, or commercial activities and that, in commercial advertising or promotion, misrepresents the nature, characteristics, or qualities, of the defendants' goods, services, or commercial activities and therefore constitutes trademark infringement under the common law of the Commonwealth of Pennsylvania.

144.    The acts of common law trademark infringement complained of herein are willful and with full knowledge of the plaintiffs' rights.

145.    The plaintiffs have been and are being damaged by the defendants' infringement of their common law trademark rights.

146.    The plaintiffs have suffered due to the above-described activities of the defendants and will continue to suffer irreparable injury if the defendants are not permanently enjoined.

<u>COUNT V</u>
(False Designation of Origin Under the Lanham Act)

147.    The plaintiffs repeat and reallege paragraphs 1 through 146 of this complaint as if they were fully set forth.

148.    The defendants' actions were and are in violation of 15 U.S.C. § 1125(a) (Lanham Act § 43(a)) which imposes liability for using in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of its services by another person.

149.    The defendants falsely and misleadingly utilized descriptions of the Marrow Cellution™ device, its benefits, and its properties as descriptions of the Marrow Stem device, its alleged benefits, and its properties.  The defendants falsely and misleadingly used research, publications, and testimonials about the Marrow Cellution™ device as research, publications, and testimonials about the Marrow Stem device.

150.    The acts complained of herein constitute trademark infringement, false designation of origin, and unfair competition under the Lanham Act.

Page 36

151.    The plaintiffs have been and are being damaged by the defendants' violation of 15 U.S.C. §1125(a) (Lanham Act § 43(a)).

152.    The plaintiffs have suffered due to the above-described activities of the defendants and will continue to suffer irreparable injury if the defendants are not permanently enjoined.

<u>COUNT VI</u>
(False Description Under the Lanham Act)

153.    The plaintiffs repeat and reallege paragraphs 1 through 152 of this complaint as if they were fully set forth.

154.    The defendant's actions were and are in violation of 15 U.S.C. § 1125(a) (Lanham Act § 43(a)) which imposes liability for using in commerce any false or misleading description or representation of fact which misrepresents the nature, characteristics,  or qualities of the advertiser's goods, services or commercial activities or those of others.

155.    The defendants' false and misleading uses of descriptions of and research, publications, and testimonials about the Marrow Cellution™ device in connection with the Marrow Stem device is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the defendants and their Marrow Stem device with the plaintiffs and their Marrow Cellution™ device or as the origin, sponsorship, or approval of the Marrow Stem device by another person.

156.    The defendants' false and misleading uses of descriptions of and research, publications, and testimonials about the Marrow Cellution™ device in connection with the Marrow Stem device were used in commercial advertising or promotion and misrepresent the nature, characteristics, or qualities of their Marrow Stem device.

157.    The plaintiffs have been and are being damaged by the defendants' violation of 15 U.S.C. §1125(a) (Lanham Act § 43(a)).

158.    The plaintiffs have suffered due to the above-described activities of the defendants and will continue to suffer irreparable injury if the defendants are not permanently enjoined.

<u>COUNT VII</u>
(Copyright Infringement)

159.     The plaintiffs repeat and reallege paragraphs 1 through 158 of this complaint as if they were fully set forth.

160.    Ranfac owns valid rights, title, and interest in Plaintiff's Copyrighted Works registered as Copyright Registration Nos TX 9-494-210 , TX 9-494-210, and TX 9-494-212.

161.    The defendants had and have access to Plaintiff's Copyrighted Works.

162.    The defendants have infringed and are infringing Ranfac's rights in Plaintiff's Copyrighted Works at least by the defendants' continued unauthorized use of substantially similar works including, but not limited to, The Stem Genix Marrow Cellution™ Page, The Stem Genix Marrow Stem Page, and the Marrowstem Website.

163.    The defendants have infringed and are infringing Ranfac's rights in Plaintiff's Copyrighted Works at least by the defendants' creation, publication, and use of unauthorized derivative works including, but not limited to, The Stem Genix Marrow Stem Page and the Marrowstem Website.

164.     The defendants' continued use of The Stem Genix Marrow Cellution™ Page, The Stem Genix Marrow Stem Page, and the Marrowstem Website in violation of Ranfac's rights, is willful.

165.    Ranfac has been and is being damaged by the defendants' infringement of its rights in Plaintiff's Copyrighted Works.

166.    Ranfac has suffered due to the above-described activities of the defendants and will continue to suffer irreparable injury if the defendants are not permanently enjoined.

COUNT VIII
(Common Law Unfair Competition)

167.    The plaintiffs repeat and reallege paragraphs 1 through 166 of this complaint as if they were fully set forth.

168.    The defendants' actions complained of herein constitute acts of unfair competition in violation of the common law of the Commonwealth of Pennsylvania in that such conduct by the defendants as competitors of the plaintiffs: (a) is likely to cause members of the public and trade, and actual or potential customers of the plaintiffs to believe that the defendants and their products and services are in some way sponsored by, affiliated with or otherwise connected to the plaintiffs and their products and services, when in fact they are not; (b) enables the defendants to trade on and deprive the plaintiffs of the benefit of the goodwill and reputation that the plaintiffs have established; (c) misappropriates the plaintiffs' commercial advantage to the benefit of the defendants and to the detriment of the plaintiffs; (d) misleads consumers and the trade as to the source and attributes of the defendants' goods; and (e) communicates false and misleading information about the plaintiffs' and the defendants' goods and services.

169.    The acts of unfair competition complained of herein are willful and with full knowledge of the plaintiffs' rights.

170.     By means and as a result of said unfair competition, the plaintiffs have suffered and continue to suffer serious and substantial injury, including irreparable injury for which the plaintiffs have no adequate remedy at law.

171.     As a result of the defendants' aforesaid conduct, the plaintiffs have suffered commercial damage, as well as the continuing loss of the goodwill and reputation established by plaintiffs.  This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which the plaintiffs have no adequate remedy at law.  The plaintiffs will continue to suffer irreparable harm unless this Court enjoins the defendants' conduct.

<u>COUNT IX</u>
(Unjust Enrichment)

172.     The plaintiffs repeat and reallege paragraphs 1 through 171 of this complaint as if they were fully set forth.

173.     This cause of action arises under the common law.

174.     By the acts and activities complained of herein, the defendants have been unjustly enriched and it would be inequitable for the defendants to retain such benefits without payment of value to plaintiffs.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, the plaintiffs, Cervos Medical LLC, and Ranfac Corp. demand judgment:

A.     Enter judgment in favor of the plaintiffs and against the defendants that Stem Genix and Biopsybell have infringed and are infringing, directly and indirectly, the '669 Patent, the '193 Patent, and the '659 Patent as alleged in Counts I, II, and III, and that such infringement is willful;

B.      Permanently enjoin Stem Genix and Biopsybell and their affiliates, subsidiaries, assigns, employees, agents, or anyone acting in privity or concert with Stem Genix or Biopsybell, from infringing, directly or indirectly, the '669 Patent, the '193 Patent, or the '659 Patent, including enjoining using or performing methods claimed in any of the '669 Patent, the '193 Patent, or the '659 Patent; inducing others to use and perform methods that infringe any claim of the '669 Patent, the '193 Patent, or the '659 Patent; and contributing to others using and performing methods that infringe any claim of the '669 Patent, the '193 Patent, or the '659 Patent, until the expirations thereof;

C.      Determine and award the plaintiffs their damages resulting from the defendants' infringement of the '669 Patent, the '193 Patent, and the '659 Patent, including treble damages as a result of defendants' willful infringement.

D.      Award the plaintiffs their reasonable costs and attorneys' fees pursuant to 35 U.S.C. § 285;

E.      Determine and award the plaintiffs their damages, , including exemplary, treble, and the defendants' profits,  resulting from the defendants' infringement of their trademark rights, as alleged in Count IV of the complaint, plus interest, costs, and attorneys' fees;

F.      Preliminarily and permanently enjoin the defendants from using the MARROW CELLUTION trademark, Defendants' Marrow Stem Trademarks, or any confusingly similar term, in any trade name, service mark, trademark, domain name, metatag, or any other use;

G.      Determine and award the plaintiffs their damages, including exemplary, treble, and the defendants' profits, resulting from the defendants' violation of 15 U.S.C. § 1125(a), as alleged in Counts V and VI of the complaint, plus interest, costs, and attorneys' fees;

9129914.1

H. Preliminarily and permanently enjoin the defendants from using descriptions and materials related to the Marrow Cellution™ device to describe, promote, offer for sale, or sell the Marrow Stem device or other goods and services;

I. Determine and award the plaintiffs their damages resulting from the defendants' infringement of their copyright rights, as alleged in Count VII of the complaint, plus interest, costs, and attorneys' fees;

J. Determine and award the plaintiffs their damages resulting from the defendants' defendants' unfair competition as alleged Count VIII of the complaint, plus interest, costs, and attorneys' fees;

K. Determine that the defendants have been unjustly enriched as a result of its actions as alleged Count IX, and award the plaintiff the value of such benefits obtained by the defendants;

L. That the plaintiffs be awarded all applicable damages, including exemplary, compensatory, punitive, statutory and treble damages and/or disgorgement of the defendants' profits, resulting from the acts complained of herein;

M. That the plaintiffs be awarded pre-judgment and post-judgment interest; and

N. Granting such other and further relief as this Court may deem just and proper.

## **<u>JURY DEMAND</u>**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

On behalf of Plaintiffs
Cervos Medical LLC, and Ranfac Corp.

Date: May 9, 2025                    By: /s/ Ryan W. O'Donnell
                                     Ryan W. O'Donnell (PA ID 89,775)
                                     RODonnell@vklaw.com
                                     Michael F. Snyder (PA ID 76,386)
                                     MSnyder@vklaw.com
                                     Volpe Koenig
                                     30 South 17th Street, Suite 1800
                                     Philadelphia, PA 19103
                                     Phone: 215.568.6400

                                     Susan G. L. Glovsky (BBO# 195880)
                                     susan.glovsky@hbsr.com
                                     Samuel J. Sussman (BBO# 696909)
                                     samuel.sussman@hbsr.com
                                     Hamilton, Brook, Smith & Reynolds, P.C.
                                     155 Seaport Blvd.
                                     Boston, Massachusetts  02210
                                     Telephone:  617-607-5900
                                     Fax:  978-341-0136

                                     *Attorneys for Plaintiffs*
                                     *Cervos Medical LLC, and Ranfac Corp.*